**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

Plaintiff,

v.

[2] ADRIAN REGALADO-VAZQUEZ

Defendant.

CIVIL NO. 19-616 (ADC) (HRV)

**ORDER**

On March 26, 2026, a United States Probation Officer ("USPO") filed a motion alleging that defendant Adrian Regalado-Vazquez ("Regalado-Vazquez") incurred in several violations to the conditions of his supervised release. (Docket No. 163). The motion specifically noted that Regalado-Vazquez twice admitted to the unlawful use of controlled substances. (Id. at 2). He told his probation officer that difficulties in his consensual relationship, as well as negative interactions in the public housing project where he resides, led him to relapse and use controlled substances. (Id.). The latter conduct was alleged to be a violation of standard supervised release condition number 8, which prohibits defendants on supervised release to associate with individuals engaged in criminal activity. (Id. at 1-2).

The motion also informed that on that same date, March 26, 2026, Regalado-Vazquez sent a text message to his USPO stating his intention to kill a woman because

1

she had allegedly posted intimate images of him on social media. (*Id.* at 3). The text message reads as follows: "I'm not one to abuse, but they uploaded a video and photos of mine and I swear I'm going to kill that fucking whore even if they give me a life [sentence]." (Id.; see also Certified English Translation, Exhibit 1). The USPO reported that upon receiving this text message via the WhatsApp messaging application, he contacted Regalado-Vazquez and that "he confirmed that his former girlfriend posted some intimate images on social media, and he was very upset." (Docket No. 163 at 3). This conduct, the USPO alleges, is a violation of the mandatory and special conditions of supervised release requiring that a person on supervision not commit a federal, state, or local crime.

On April 10, 2026, the defendant appeared before me for a preliminary revocation hearing. (Docket No. 177). He waived his right to a preliminary revocation hearing with respect to the drug use and criminal association violations. Accordingly, as to those, I found probable cause. (Id., see also Docket No. 176). As to the alleged new criminal conduct, Regalado-Vazquez indicated that he was not factually contesting that the text message at issue was sent. He argued, however, that the conduct does not constitute a crime because, he was just venting to his USPO and there is no evidence that the message reached the person referenced in the message.

The Government responded that although no formal charges have been filed against the defendant, a revocation of supervised release proceeding can be based on the conduct of the defendant and that the text message communicates a threat to cause harm. According to the Government, said conduct constitutes a criminal offense under both federal and Puerto Rico law, particularly 18 U.S.C. § 875(c), article 177 of the Puerto Rico

2

Penal Code (Threats), P.R. Laws. Ann., tit. 33, § 5243, and article 3.3 of the Puerto Rico Domestic Violence Prevention and Intervention Act, P.R. Laws Ann., tit. 8, § 633. The United States thus requested that a finding of probable cause be made with respect to the allegation of new criminal conduct. The parties agreed that no evidentiary hearing was necessary and submitted the matter to my consideration on the legal issue of whether the communication in question amounts to an unlawful threat.

Rule 32.1 of the Federal Rules of Criminal Procedure provides in relevant part that "[i]f a person is in custody for violating a condition of probation or supervised release, a magistrate judge must promptly conduct a hearing to determine whether there is probable cause to believe that a violation occurred." Fed. R. Crim. P. 32.1(b)(1)(A). If probable cause exists, the matter is referred to the district judge to hold a revocation hearing where the government has the burden of proving the violation by a preponderance of the evidence. Fed. R. Crim. P. 32.1(b)(1)(C); *United States v. Serrano-Berrios*, 38 F.4th 246, 247-48 (1st Cir. 2022) (citing *United States v. Whalen*, 82 F.3d 528, 531-32 (1st Cir. 1996)). "[P]robable cause may be found where there is a 'fair probability,' based on the totality of the circumstances, that a defendant committed the offense [or violation] charged." *See United States v. Balestier-Sanches*, No. 14-MJ-060PAS, 2014 WL 993551, 2014 U.S. Dist. LEXIS 33735, at *2 (D.R.I. Mar. 13, 2014) (citing *United States v. Mims*, 812 F.2d 1068, 1072 (8th Cir. 1987) and *United States v. Gomez*, 716 F.3d 1 (1st Cir. 2013)). Moreover, the application notes to the relevant sentencing guideline provides as follows:

> Under 18 U.S.C. § 3583(d), a mandatory condition of supervised release is that the defendant not commit another federal, state, or local crime. A violation of this condition may

be charged whether or not the defendant has been the subject of a separate federal, state, or local prosecution for such conduct. The grade of violation does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding. Rather, the grade of the violation is to be based on the defendant's actual conduct.

U.S.S.G. § 7C1.1, cmt. n.1. Thus, I am called upon to decide whether probable cause exists that the defendant incurred in "conduct" that constitutes a federal, state, or local crime, regardless of whether formal charges have been filed or a conviction obtained. *See United States v. Lapinski*, 993 F.2d 1531 [reported in full text format at No. 92-1867, 1993 WL 138528, 1993 U.S. App. LEXIS 10070 at *11 n.6 (1st Cir. May 3, 1993)]; *see also United States v. Franklin*, 51 F.4th 391, 398 n. 4 (1st Cir. 2022).

Section 875(c) criminalizes the transmission in interstate commerce of "any communication containing . . . any threat to injure the person of another[.]" 18 U.S.C. 875(c). The criminal offense codified in Section 875(c) entails the following four elements: (1) the defendant knowingly transmitted in interstate or foreign commerce a communication; (2) the communication contained a "true" threat, that is, a reasonable person would perceive the communication to constitute a threat[1]; (3) the communication threatened to injure the person of another; and (4) the defendant intended that the communication serve as a threat or knew that the communication would be viewed as a threat. *See United States v. Baker*, 514 F. Supp. 3d 1369, 1376 (N.D. Fla. 2021). As to the

---

[1] "True threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black,* 538 U.S. 343, 359 (2003).

4

fourth element—the *mens rea* element—the Supreme Court in *Elonis v. United States*, 575 U.S. 723, 741 (2015) made clear that "negligence is not sufficient to support a conviction under Section 875(c)." Subsequently, the Supreme Court reaffirmed that the First Amendment does require a subjective understanding of the threatening nature of the statements made but clarified that a mental state of recklessness is sufficient. *Counterman v. Colorado*, 600 U.S. 66, 79 (2023) ("In the threats context, [recklessness] means that a speaker is aware 'that others could regard his statements as' threatening violence and 'delivers them anyway.'").

Further, that the threat was not specifically directed at, or received by, the intended target is irrelevant. *See United States v. Baker*, 514 F. Supp. 3d at 1378 (quoting *United States v. Morales*, 272 F.3d 284, 288 (5th Cir. 2001)) ("The language of § 875(c) does not require that the threat be made directly to the intended target; it simply prohibits 'any threat to injure the person of another' made in interstate commerce."); *see also United States v. Jeffries*, 692 F.3d 473, 483 (6th Cir. 2012) (holding that the interstate threats statute "prohibits a 'communication containing any threat' regardless of whether the threat reaches the target."); *United States v. Stoner,* 781 F. App'x 81, 86 & n.6 (3d Cir. 2019) (subjective element of Section 875(c) was satisfied where defendant "directly referenced violence targeting police officers" although police officers were not the recipient of the threat); *United States v. Doggart,* 906 F.3d 506, 511 (6th Cir. 2018) ("Section 875(c) does not require the defendant to communicate the threat to the victim."); *United States v. Schueller*, 136 F. Supp. 3d 1074, 1076 (D. Minn. 2015) (same).

Here, there is no dispute that the text message was sent to the USPO via WhatsApp, thus satisfying the interstate commerce element. *See United States v.*

*Jackson*, Criminal No. 20-118, 2021 WL 2291828, 2021 U.S. Dist. LEXIS 105040, at *11 (W.D. Pa. June 4, 2021) (noting in the context of a challenge to the sufficiency of the allegations of an indictment charging a violation to section 875(c) that courts have recognized that telephones and cellular telephones are instrumentalities of interstate commerce); *see also United States v. Segari*, No. 25-cr-456-KKM-AAS, 2026 WL 653757, 2026 U.S. Dist. LEXIS 47230, at *9-10 (M.D. Fla. Mar. 9, 2026) (explaining that the use of instrumentalities of commerce such as the internet and cellphones are sufficient to satisfy the interstate commerce element of § 875(c)). Defendant has also conceded that he knowingly sent the text message to his USPO. Objectively, a communication that says "I swear I'm going to kill" the intended target contains a true threat, that is, a serious expression of an intent to commit an act of unlawful violence against his former girlfriend. Lastly, on the subjective *mens rea* element, there is probable cause to believe that by sending the message to the USPO, knowing that the USPO would have to act upon it, the Defendant intended, or at least knew, that said communication would be perceived as a threat. That is so because viewing the context surrounding the text message—keeping in mind that the defendant was "very upset" that intimate images of him were posted in social media—along with the explicit acknowledgement that he would get a life sentence if he followed through with the killing of the person who wronged him, is more than enough to establish the requisite mental state at this stage. Simply put, there is probable cause that the conduct at issue is violative of section 875(c) because the text message, knowingly transmitted in interstate commerce, contained a threat of present or future violence and the context demonstrates

that Defendant intended to communicate such a threat and/or knew that it would be viewed as such. *See United States v. Leveke*, 38 F.4th 662, 668 (8th Cir. 2022).

I also find probable cause that the conduct at issue meets the elements of the offense codified in article 177 of the Puerto Rico Penal Code. *See United States v. Navarro-Santiesteban*, 83 F.4th 44, 54 (1st Cir. 2023) (affirming revocation of supervised release judgment where the underlying conduct was the misdemeanor offense of threats under article 177 and noting that to be convicted of said offense evidence must be adduced that the defendant "threaten[ed] one or several individuals with causing determined harm to their person or family."); P.R. Laws. Ann., tit. 33, § 5243.

There is also a fair probability that the conduct violates article 3.3 of the Puerto Rico Domestic Violence Prevention and Intervention (Abuse by Threat), P.R. Laws Ann., tit. 8, § 633. Article 3.3 provides in relevant part that "[a]ny person who threatens to cause harm to . . . the person . . . with whom he/she has or has had a consensual relationship . . . shall be guilty of a fourth-degree felony in the upper end of the range." *Id.* Article 3.3 further states that the unlawful threat also occurs through the use of any type of electronic or digital communication, text message, voice message, email, social media or any digital medium. *Id.* The Puerto Rico Supreme Court has held that all article 3.3 requires is a threat to cause a specific harm. *Pueblo v. Ayala-Garcia*, 186 DPR 196, 215, 2012 TSPR 120, 2012 PR Sup. LEXIS 115 (2012).

The motion filed by the USPO states that Regalado-Vazquez confirmed that the female alluded to in the text message is a "former girlfriend" who posted intimate images on social media thus showing a fair probability that the intended victim was a person

7

with whom the defendant had a consensual relationship at some point in time. And as discussed in the context of § 875(c), the text message contains a specific threat to "kill" the victim.

For the reasons discussed above, I find that there is probable cause that Regalado-Vazquez violated the mandatory and special conditions of his supervised release requiring that he not commit another federal, state, or local crime as alleged in the motion filed at Docket No. 163. This matter is referred to the presiding District Judge for the holding of a final revocation hearing together with the other violations as to which I had previously found probable cause.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 22nd day of April, 2026.

S/Héctor L. Ramos-Vega
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE

8